# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **CORINNE M. CHABOREK**, <br><br> Plaintiff, <br><br> vs. <br><br> **FORD COMPONENT SALES LLC**, <br><br> Defendant. | 2:18-CV-12763-TGB <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND DENYING PLAINTIFF'S CROSS-MOTION** |

Plaintiff Corinne Chaborek claims that Defendant Ford Component Sales improperly denied her benefits under an employee profit-sharing plan governed by the Employee Retirement Income Security Act ("ERISA"). Plaintiff initially filed a Complaint in Wayne County Circuit Court alleging breach of contract, unjust enrichment, promissory estoppel, and quantum meruit. ECF No. 1. Defendant removed the case to federal court where ERISA governs adjudication of the parties' dispute. *Id.* Plaintiff does not contest federal jurisdiction over the matter. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 12 PageID.249. For the reasons below,

1

Defendant's Motion for Judgment is **GRANTED** and Plaintiff's Cross-Motion is **DENIED.**

I.     Facts

Plaintiff worked for Defendant Ford Components for over ten years, from August 2, 2002 until January 6, 2014. During 2013, Plaintiff participated in a "profit-sharing plan." The profit-sharing plan is an employee pension plan subject to the requirements of ERISA.[1] Under the Plan, 50% of the profit-sharing award goes to the employee's savings plan (a 401(k) account), and 50% is awarded as a cash bonus. The parties agree that Plaintiff received the savings plan portion of her benefit for 2013. Response to Defendant's Motion for Judgment, ECF No. 9 PageID.132. But Plaintiff contends that she is also entitled to the cash portion of the profit-sharing plan that she earned during her final Performance Period, ending on December 21, 2013, in the amount of $18,379.89.

---

[1] The Court asked for supplemental briefing on the issue of whether the profit-sharing plan was subject to ERISA in light of case law deeming similar programs outside ERISA's scope. ECF No. 13. Defendant's Response justifies ERISA's application to the plan with reference to the plan's provision for a contribution to an employee savings plan meant to provide income during retirement. ECF No. 14 PageID.259–60. After reviewing Defendant's Response, the Court is satisfied that it possesses jurisdiction to adjudicate this matter.

The terms of the Plan allow Defendant "full power and authority to interpret, administer, modify, suspend, and terminate the Plan" and permits Defendant to delegate that authority. The Plan terms also state that any participant "who terminates employment or is terminated by the Company for any reason other than Company-approved retirement, disability or death prior to the payment by the Company of the Award shall not be eligible for an Award under the Plan." ECF No. 5 PageID.43.

Plaintiff took medical leave under the Family Medical Leave Act ("FMLA") beginning on October 1, 2013. That leave was set to expire on December 23, 2013. Prior to expiration, on December 16, 2013, Plaintiff extended her leave by submitting a note from her physician designating January 6, 2014 as her new return-to-work date. Defendant claims—and the administrative record supports—that despite the note indicating she would return on January 6, 2014, Plaintiff made no attempt to communicate with her employer until her attorney contacted Defendant on March 20, 2018.

Because Plaintiff did not return to work on January 6, 2014 as scheduled, her FMLA leave expired. Defendant states that Plaintiff was terminated as "voluntary quit." On February 3, 2014, Defendant sent

Plaintiff a letter regarding the termination of Plaintiff's employment. This letter says that Plaintiff could still collect her award under the Plan if she agreed to sign a waiver and release agreement releasing any claims relating to her employment or termination. Administrative Record, ECF No. 5 PageID.55. The letter also requested that Plaintiff return company property in her possession. *Id.* Defendant maintains that the Plan did not require Defendant to pay Plaintiff the award, but Defendant offered to do so provided that she sign the waiver and release of claims. Although Plaintiff claims that Defendant issued, but did not send, a check for her award, Defendant maintains that it has never issued a check because Plaintiff did not sign the waiver and release of claims and did not return the company property in her possession. The record contains no evidence of an issued check for the cash portion of the benefit.

**II.  Legal Standard**

The two issues presented in Plaintiff's Cross-Motion for Judgment receive different standards of review. First, the Court reviews *de novo* "the legal question of whether the procedure employed by a plan administrator in terminating benefits meets the requirements of § 1133." *Houston v. UNUM Life Ins. Co. of Am.*, 246 F. App'x 293, 299 (6th Cir. 2007)

4

(citing *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005). Therefore, on Plaintiff's first claim in her Cross-Motion, that Defendant's benefit and appeal denials were procedurally deficient under 29 U.S.C. § 1133, the Court employs *de novo* review.

Parties disagree regarding which standard of review applies to the *substantive* benefit determination, the second claim in Plaintiff's Cross-Motion. Plaintiff argues that the Plan administrator's denial of her benefit should be reviewed *de novo* under *McCartha*, 419 F.3d at 444. Defendants argue the denial of benefits should be reviewed for whether it was arbitrary and capricious under *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 115 (1989).

Under *McCartha*, a denial of benefits is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan" in which case the administrator's decision is affirmed if it is "rational in light of the plan's provisions." *McCartha*, 419 F.3d at 441 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Marks v. Newcourt Credit Group Inc.*, 342 F.3d 444, 456–57 (6th Cir. 2003) (internal quotations omitted)); *accord Wilkins v. Baptist Healthcare Sys.*, 150

F.3d 609, 616 n.4 (6th Cir. 1998); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996); *Pransch v. The Guardian Life Insurance Co. of America*, No. 16-10723, 2017 WL 4054174, at *1 (E.D. Mich. Sept. 14, 2017).

Defendant argues that the Profit-Sharing Incentive Plan ("the Plan"), ECF No. 5 PageID.43, grants Defendant discretionary authority to determine eligibility for benefits and that the Court should review its decision under the arbitrary and capricious standard. The Court agrees.

The Plan lists the Ford Component Sales Compensation Committee of the Board of Directors of the Company as the Plan Administrators. *Id*. The Plan also explicitly states that the Administrators "shall have full power and authority to interpret, administer, modify, suspend, and terminate the Plan." *Id*.

This language clearly confers discretion on the administrators, thereby warranting arbitrary and capricious review. *See Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2003) (applying arbitrary and capricious review where plan language gave the plan admin-

istrator the power to "make the rules and regulations necessary to administer the Plan and . . . interpret the terms of the Plan, determine eligibility for benefits and to determine the amount of such benefits").

The Court therefore reviews Defendant's substantive denial of benefits under the arbitrary and capricious standard of review, a highly deferential standard. *Yeager*, 88 F.3d at 380. But it also bears in mind the potential conflict of interest that can arise where, as here, Defendant both funds and administers the plan. *See Marks*, 342 F.3d at 457 (citing *Bruch*, 489 U.S. at 115; *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n.4 (6th Cir. 2000)). The court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA*, 385 F.3d 989, 992 (6th Cir. 2004). But as the Court notes in considering Plaintiff's claim below, Defendant's decision would not violate ERISA under either *de novo* or arbitrary and capricious review because its denial of Plaintiff's benefit is permitted by the plain terms of the Plan.

## III. Analysis

### a. Violation of 29 U.S.C. § 1133

As Plaintiff correctly notes, 29 U.S.C. § 1133 requires that denial of a benefit must include "adequate notice in writing" of the denial, "setting forth the specific reasons for such denial," and must "afford a reasonable opportunity" for full and fair review of the denial. Here, Defendant failed to comply with the statute, as explained in greater detail below. The implementing regulations for this statute specify that an adverse benefit determination notice must include:

(i) The specific reason(s) for the adverse determination;

(ii) Reference to the specific plan provisions on which that determination was based;

(iii) A description of any additional materials or information necessary so that the claimant can perfect the claim;

(iv) A description of the plan's review procedures including the applicable time limits and a statement that the claimant has a right to bring a civil action under Section 502 of ERISA following the internal review of an adverse benefit determination.

29 C.F.R. § 2560.503-1(g)(1)(i)–(iv). Defendant's denial of Plaintiff's benefit under the Plan was conveyed in the February 3, 2014 letter. In this letter, Defendant stated: (1) Plaintiff would be eligible for profit sharing

8

under the Plan if she signed a Waiver and Release Agreement; (2) Profit sharing would be paid as one lump sum following the receipt of the Waiver and Release Agreement; and (3) If Plaintiff did not sign the Waiver and Release Agreement within the deadline indicated, she would not receive her profit sharing benefit. ECF No. 10-1 PageID.176. The letter did *not* state that due to her separation prior to the benefit being paid, she was no longer eligible for payment under the terms of the Plan. Nor did it state that Plaintiff had an opportunity to appeal this determination. This notice is plainly insufficient under 29 U.S.C. § 1133 and its accompanying regulations, failing to state all four of the required elements detailed in 29 C.F.R. § 2560.503-1(g)(1)(i)–(iv).

Defendant makes several arguments in its Response to Plaintiff's claim under 29 U.S.C. § 1133, none of which the Court finds persuasive. Defendant first argues that Plaintiff waived her right to assert a challenge to Defendant's decision under § 1133 because she did not do so prior to the deadline for "procedural challenges" set forth in the Court's Case Management Scheduling Order, ECF No. 4. The Court recently dealt with this argument in another factually similar case, finding that a pro-

9

cedural challenge refers to a request for discovery beyond the administrative record in a case alleging violation of ERISA, not a charge that a defendant violated § 1133. *Zack v. McLaren*, 340 F. Supp. 3d 648, 657 (E.D. Mich. 2018). Plaintiff appears to have been aware of this decision, because her Reply uses some of *Zack's* language on this issue without attribution. *Compare* Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Judgment, ECF No. 12 PageID.250-51, *with Zack*, 340 F. Supp. 3d at 657.[2] Despite the lack of any citation, Plaintiff is correct that the reasoning the Court employed in *Zack* applies to this case. Plaintiff is not asking for additional discovery, simply charging that Defendant violated ERISA. Defendant's objection based on the timeliness of Plaintiff's allegation under § 1133 is therefore unavailing.

Defendant next argues that it did substantially comply with the notice and document production requirements of § 1133. So long as a defendant demonstrates "substantial compliance," it will be held to have satisfied § 1133. *McCartha*, 419 F.3d at 444. A defendant may rely on the

---

[2] The language from *Zack* that appears in Plaintiff's brief is: "Because Plaintiff is not asserting a 'procedural challenge' as ERISA case law uses that term—alleging bias in the decision-making process or an incomplete administrative record—Defendant's argument is irrelevant." These lines from *Zack,* though accurate and helpful to Plaintiff's position, are included in Plaintiff's Reply at PageID.250-51, without any citation to this Court's prior opinion.

cumulative effect of communications when establishing substantial compliance. *Kent v. Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996). "The question is whether [the plan participant] was supplied with a statement of reasons that under the circumstances of the case permitted a sufficiently clear understanding of the administrator's decision [so as] to permit effective review." *Jones v. Iron Workers Local 25 Pension Fund*, No. 14-10031, 2014 U.S. Dist. LEXIS 159718, at *28 (E.D. Mich. Nov. 13, 2014) (quoting *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006)).

Specifically, Defendant states that the February 3, 2014 letter indicated that because of Plaintiff's termination, she could receive her profit sharing benefit only by signing the Waiver and Release Agreement. Defendant also invokes its communications with Plaintiff in December 2013, notifying her that she must return to work after her FMLA leave was exhausted. But these communications are insufficient to provide a clear understanding of the decision. For example, in its communications with Plaintiff in late 2013 and early 2014, Defendant never states that the terms of the Plan preclude a profit sharing benefit where the employee is terminated before the benefit is paid. This basic information is

11

essential to Plaintiff's understanding of the reason for denial. Based on the record before it, the Court cannot conclude that Defendant substantially complied with § 1133.

"Where administrators have failed to comply with the procedural requirements of [29 U.S.C. § 1133], it is ordinarily appropriate to reverse the denial of benefits and to remand the case to the plan administrators." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 461 (6th Cir. 2003). In this case, however, Defendant's failure to comply with these statutory provisions offers no relief to Plaintiff because Defendant's decision not to award Plaintiff a benefit under the Plan was consistent with the only plausible reading of the Plan terms. If the determination were to be remanded, Defendant would be obligated to make the same decision under the Plan terms. Therefore, remand to the Plan Administrator for further consideration would be futile. Where remand would be futile, violation of § 1133 does not require remand. *See Kmatz v. Metropolitan Life Ins. Co.*, No. 1:04-CV-436, 2006 WL 1209362, at *9 (S.D. Ohio May 4, 2006) (citing *McCartha*, 419 F.3d at 447).

**b. Denial of Benefit**

As just discussed, Defendant did not act arbitrarily and capriciously when it denied Plaintiff's benefit. The Plan exempts from eligibility "any such person who terminates employment or is terminated by the Company for any reason other than Company-approved retirement, disability or death prior to the payment by the Company of the Award." ECF No. 5 PageID.43. In other words, unless a person's termination is due to Company-approved retirement, disability or death, any person terminated prior to payment of the Award by the Company is ineligible to receive the award. Plaintiff argues that Defendant's denial of her benefit was arbitrary and capricious because Defendant approved her FMLA leave through January 6, 2014. Plaintiff contends that this classifies her separation from Defendant as a "Company-approved disability." But this interpretation ignores the phrase in the Plan terms: "prior to the payment by the Company of the Award." Even if Plaintiff's FMLA leave, approved through January 6, 2014, *was* a Company-approved disability leave, that leave concluded on January 6, 2014. After that date, Plaintiff was no

13

longer on Company-approved disability—she had been terminated. Defendant had not yet paid out the profit sharing awards for the 2013 performance period as of January 6, 2014. Therefore, under the plain terms of the Plan, Plaintiff was not on Company-approved disability, but rather was terminated, prior to the payment by the Company of the Award. Plaintiff therefore was ineligible to receive the award.

Plaintiff claims that Defendant informed her that her benefit under the profit sharing Plan was "vested." However, the document upon which Plaintiff relies for this contention refers to a "Discretionary Employer Contribution (DEC) to the 401(k) Employee Savings Plan." Plaintiff's Motion for Judgment, ECF No. 6 PageID.98. The terms of the Plan provide for 50% of the profit-sharing award to be contributed to the employee's savings account under the Employee Savings Plan—a 401(k)—as long as the employee meets the eligibility criteria under *that* plan. *See* ECF No. 5 PageID.45–46; Defendant's Response to Order to Show Cause, ECF No. 14 PageID.260. The document Plaintiff relies upon to show her entitlement to the benefit is not relevant because Plaintiff *did* receive the portion of the award contributed to her savings plan. Plaintiff's Response to Defendant's Motion for Judgment, ECF No. 9 PageID.132.

Defendant's denial of Plaintiff's benefit was not arbitrary and capricious, and, indeed, was correct pursuant to the Plan's terms. Plaintiff's claim for her benefit is therefore denied. Defendant's first contention in its own Motion for Judgment on the Administrative Record urges the Court to find that Plaintiff was not entitled a benefit under the Plan. For the reasons outlined above, Defendant's Motion is granted.

### c. Equitable Relief

In Plaintiff's Complaint, she seeks relief on four grounds: breach of contract, unjust enrichment, promissory estoppel, and quantum meruit. Although Plaintiff did not include any equitable claims in her Motion for Judgment on the Record, Defendant's Cross-Motion opposed such remedies. Defendant argues that Plaintiff's claims for unjust enrichment and quantum meruit are duplicative of the breach-of-contract claim and should be dismissed for the same reasons that her ERISA benefit claim is subject to dismissal. In addition, Defendant argues that Plaintiff's estoppel claim must be dismissed because Defendant's denial of Plaintiff's benefit was not arbitrary and capricious.

ERISA preempts state law breach-of-contract remedies. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987). Where Congress has provided an adequate remedy at law, a claimant is not permitted to repackage a legal claim as an equitable one. ERISA permits claims for equitable relief under § 502(a)(3) only where it is impossible to redress the claimant's alleged injury through legal remedies. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015) (citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996)). Here, Plaintiff has requested the identical remedy in each Count of her Complaint—an award of the cash portion of the profit-sharing benefit for 2013.[3] The Court has already determined that Plaintiff was not entitled to this benefit under the plain terms of the Plan. For the same reasons, she is not entitled to equitable relief under ERISA § 502(a)(3).

For all the above reasons, Defendant's Cross-Motion for Summary Judgment is **GRANTED**, while Plaintiff's Cross-Motion for Summary

---

[3] In her Complaint, Plaintiff requests relief in the amount of $29,128.20. ECF No. 1 PageID.11. Her Complaint also states that she "was to receive a check from Defendants" for $18,379.89, representing her profit share minus taxes. *Id.* at PageID.10. It is not clear whether the discrepancy between these two amounts is due to applicable taxes. But the distinction is ultimately immaterial because Plaintiff is not entitled to the Plan benefit she requests.

Judgment is **DENIED**. The Complaint is therefore **DISMISSED** with prejudice.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: June 7, 2019